UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

     Roger Bell and Terri Bell                     Case No. 04-11119 K

                             Debtor
------------------------------------------------------------------

OPINION AND ORDER

        In the case of *In re White*, 169 B.R. 526 (Bankr. W.D.N.Y. 1994), this Court ruled that if a Chapter 13 debtor loses her manufactured home despite good faith efforts to save it under her Plan, she may treat any deficiency as an unsecured claim, because that is a necessary implication of our Chapter 13 Plans.

        In the case of *In re Taylor*, 243 B.R. 226 (Bankr. W.D.N.Y. 2000) this Court ruled that the same is true as to a car that "gave out" during the Chapter 13 case, so long as the debtor has acted in "good faith."

        Familiarity with those decisions is presumed below.

        Now the question is whether a Chapter 13 debtor whose car is "totaled" in an accident during the performance of the confirmed Plan, may surrender the insurance check and treat the deficiency (vis a vis the "stripped down value" established at confirmation) as an unsecured claim.

        The lender does not contest the Debtor's "good faith" here. Only a question of law is presented. The lender argues that the "risk of loss" fell on the Debtor when she chose to strip-down the car lien and to include it in the Plan. Where, as here, it appears that the Debtor can afford to complete the original Plan (the deficiency is only about $1300), this lender's

argument would turn the Debtor into an "insurer" of the stripped-down value, as a consequence of the binding effect of Plan Confirmation (11 U.S.C. § 1327(a). (See *White, Taylor,* and the dissenting opinion in *In re Atkins*, 425 F.3d 296 (6th Cir. 2005).

In this writer's view, this case turns on the differences among Districts in the degree of detail contained in Chapter 13 Plans, regarding the contract rights of lienholders.

In some Districts, this $1300 case might raise a million dollar question. (The aggregate debt limits for Chapter 13 are now over $1 million). However, this question is posed in a Division of this District in which the content of Chapter 13 Plans is minimal - - designedly-so.[1] As a consequence, the Court need not and will not render a decision that is based simply on the language of the Plan. (No more than 1% or 2% of our Chapter 13 cases ever implicate the language of the Plan and the "binding effect" of its Confirmation). A change in decades-long practice is not warranted. Rather, a decision based on the long-standing "fair inferences" of our Plans and of our processes is presented, just as it was in *White and Taylor*.

## HOW AUTO LIENS ARE ADDRESSED HERE

For 20 years or more in this District, car loans were bifurcated into a secured and an unsecured claim, on the basis of NADA wholesale values that were then negotiated, if necessary, to stipulated values. Tens of thousands of car liens were so "satisfied" in Chapter 13 cases in this District, and many millions of dollars flowed to the car lenders as a consequence.

In this Division of this District, only one change was made in response to the

---

[1] The Plan in this case is typical, and is appended to this decision.

United States Supreme Court's decision in *Assocs. Commercial Corp. v. Rash,* 520 U.S. 953 (1997). That decision was implemented by adoption of a new "rule of administrative convenience" by which the value of automobiles for purposes of Chapter 13 plan confirmation is the current NADA book value, utilizing the "average <u>retail</u>" price, minus 5%. (The 5% adjustment was adopted to reflect the fact that the High Court in *Rash* stated that full fair market retail value contains an element of dealer "profit" that should not be granted to the lender, since the vehicle is intended to remain "in the hands of the debtor.")

Because this is simply a "rule of administrative convenience," either side of the issue is invited to seek to establish a different valuation of any particular vehicle. Since the *Rash* ruling and the adoption of this rule, this writer has <u>never</u> had to conduct a valuation hearing regarding any vehicle that is in fact contained in the NADA books. (Values of classic cars, on the other hand, often are not contained in such books.) And a few thousand vehicles are so dealt with in Chapter 13 cases here each year.

The car lenders look at the value placed on the vehicle by the debtor in the debtor's Schedules, and if they think it too low, based on the rule of administrative convenience, the lender either sends a representative to the § 341 meeting to work with the Chapter 13 Trustee and the debtor in computing the correct value, or files an objection to confirmation. Sometimes the lender sends out an appraiser. The end result is <u>always</u> reached by stipulation, and any objection that was filed is withdrawn by the lender when the stipulation is reached.

Lenders who do not have a representative in attendance at the § 341 meetings work out the value by telephone or other communications with the debtor's attorney, and the

Chapter 13 Trustee's oversight.

If confirmation cannot go forward for some other reason, the Court routinely has granted "adequate protection" interim payments to the lender in the amount that they will be receiving from the plan payments after confirmation.[2]  Thus, any delay in confirmation does not delay the lender's receipt of the payments it is expecting to receive based on the stipulated value of the collateral.

In ordinary consumer Chapter 13 cases (as opposed to Chapter 13 business cases concerning very valuable tractor-trailers, for example) no special requests are ever made for special provisions in the plan or the Order confirming the plan, with respect to the possibility of future defaults, future mechanical problems, or anything of that nature.[3]  Rather, <u>the contract between the debtor and the lender remains in full force and effect</u> with <u>only three exceptions</u> that are more fully discussed below - (1) repayment amount as per *Rash*, (2) the repayment terms and (3) if there was a pre-petition default, the right of possession.

If, as often happens, a debtor falls out of compliance with the pre-bankruptcy contract, such as by failing to provide proof of continuing insurance, a motion to lift stay is brought, and unless a "cure" is stipulated in a "Conditional Order" or ordered by the Court, the lift of stay <u>is granted on the basis of the breach of the pre-petition contract</u> between the debtor and the lender.  Lift of stay also is granted if monthly payment defaults by the debtor under the

---

[2]"Adequate protection" payments pending confirmation are now mandated by 11 U.S.C. 1326(a)(1)(C) (West 2006).

[3]"Conditional Orders," after a lift-stay motion, do sometimes contain such special provisions.

terms of the plan are not explained and are not found by the Court to be temporary.[4]  After any lift of stay, and repossession and sale, a lender files an "Amended Unsecured Claim" for the deficiency <u>on the entire loan</u>, after application of all <u>contract</u> provisions regarding lender's costs of repossession, sale, etc.

The process is seamless and works flawlessly in thousands of Chapter 13 cases filed in this Division of this District each "normal" year.[5]  And this process has so functioned for longer than the 25 years this writer has served this Court in one official capacity or another.

### DISCUSSION

GMAC is the lender here, and it relies principally on two Sixth Circuit decisions that carefully examined the split of authority on the question at Bar.  That Circuit categorically rejected efforts by Chapter 13 debtors to turn the deficiency portion of the previously-allowed stripped-down "secured claim" into an "unsecured claim" after the collateral has been surrendered or repossessed.  The cases are *In re Nolan*, 232 F.3rd 528 (6th Cir. 2000), and *In re Atkins*, 425 F.3rd 296 (6th Cir. 2005).  In the latter case, the three-judge panel of the Sixth Circuit

---

[4] Because the unpaid balance of the secured portion of the claim continues to accrue a "present value factor" as per *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), a secured claimant suffers no injury if the Court is convinced that any lapse in Plan payments was temporary and that the debtor can, in fact, complete the Plan. The holder of the secured claim is injured if the lapse in Plan payments results in depreciation, wear, and tear in excess of the payments actually received; but the balance of the secured claim (and sometimes the balance of the deficiency claim) is accruing *Till* "interest" and so no harm results to the lender so long as the debtor can and does complete the Plan. The car may be a piece of "junk" at the end of the Plan, but the lender got a *Till* return on what the value of the car was at the time of confirmation. As for the debtors? They got to keep the car - to get to their jobs to earn money and pay taxes, to get a loved one to a doctor, to live a halfway decent life.

[5] The year 2005 was abnormal in light of the filing spike that occurred just prior to the October 17 effective date of the 2005 Bankruptcy Amendments.

split on the question presented . The majority explicitly analyzed this Court's holding in *In re White* as follows:

> Another case cited by the Trustee has allowed a reclassification of a secured claim following a post-confirmation sale of repossessed collateral. . . . See *In re White,* 169 B.R. 526, 529 (Bankr. W.D.N.Y. 1994). Explicitly projecting [analysis of 11 U.S.C. § 1329 or 11 U.S.C. § 502(j)] and relying on what it termed as 'common sense, common law, and custom and practice,' . . . the *White* Court found that 'the lien that the secured creditor retains by virtue of 11 U.S.C. § 1325(a)(5)(B) is precisely what a lien is expected to be at common law. . . . When a 11 U.S.C. § 362(d) motion [to lift the automatic stay] is properly made and granted, it is usually explicitly recognized (and always implicitly recognized) that the grant of the motion relegates the parties to their State Law rights.' . . . Therefore, the *White* Court found that any deficiency resulting from the post confirmation sale of repossessed collateral was automatically converted to an unsecured claim, that a creditor claims under the confirmation [sic] plan are 'deemed amended.'. . .
>
> The *White* Court, however, cited no authority for these holdings. We do not find it 'obvious' that the secured creditor that retains a lien under pre-B.A.P.C.A. § 1325(a)(5)(B) enjoys the same creditor rights he did prior to the debtor's bankruptcy filing. See *Rash*, 520 U.S. at 964, 117 Supreme Court 1879 ('in allowing Chapter 13 debtors to retain and use collateral over the objection of secured creditors, however, the Code has reshaped debtor and creditor rights in marked departure from State Law.') Moreover, the *White* Court's logic explicitly allowed a secured creditor to retain any appreciated gain remaining from the sale of repossessed collateral . . . , a result that no other Court has recognized. . . . Therefore, we do not find *White* persuasive.

Thus, the majority in the Sixth Circuit case found two flaws in this Court's analysis of *White*. One was a failure of this writer to persuade the majority that third-party authority was not necessary for the proposition that lift of stay always relegates the parties to

their State Law rights.[6]  Secondly, the majority seemed unwilling to accept the fact that a repossessing creditor would, under applicable State Law, enjoy the benefit of any appreciation in the collateral and so the majority held that logic dictates that the lender not be forced to suffer any loss of value.

Taking the second point first, it really should not require any third-party authority for this proposition.  Under the Uniform Commercial Code, the Uniform Retail Installment Sales Act, mechanics' lien law, mortgage law, or other state laws governing creditors' rights of repossession and sale of various forms of collateral, appreciation always does belong to the secured creditor so long as the creditor is not paid more than in full by the sale price. [7] Lift of the § 362 stay puts the secured creditor in precisely the circumstance it would have been in had bankruptcy not intervened and had the creditor realized upon its collateral exclusively under State Law.  Certainly, the fact that the bankruptcy filing did intervene may [8]have delayed the secured creditor in those efforts.  But if the collateral has increased in value between the time of filing of the case and the time of the actual liquidation of the collateral, that appreciation does go to the secured creditor in accordance with State Law, so long as the creditor is not paid more than in full.  The creditor is expected to file an amended unsecured claim in the Chapter 13 case reflecting any smaller deficiency than the "allowed unsecured claim" that was computed at the

---

[6]This writer failed to include, in the *White* decision, the explanation of the local practice that I have set out above in this Decision.  What is "obvious" to this writer could not have been obvious to the Circuit, without such an explanation.

[7]Importantly, there is nothing in the Chapter 13 Plans here to the contrary.  This critical point seemed to be lost on the *Atkins* majority; but that was due to this writer's failure to be more expansive in *In re White*.

[8]Not all car loans are in default on the date of the bankruptcy filing - hence the use of the word "may".

time of confirmation. And the Trustee must be notified of any actual "surplus." In sum, there is no flaw of logic in *White*. The lender enjoys appreciation but suffers depreciation, just as under non-bankruptcy law.

As to the Sixth Circuit's criticism to the effect that this writer cited no third-person authority for the proposition that lift of stay relegates the parties to their State Law rights, this writer respectfully offers the following reasons why this writer previously thought this to be "obvious." As noted above, in this Division of this District only three rights of a car lender are "modified" under 11 U.S.C. § 1322 in the usual Chapter 13 plan - the repayment amount (as per *Rash*), the repayment terms (including any amounts that will be discharged by law if the Plan is not a 100% Plan for unsecured creditors), and the right of possession (which is not implicated at all at the time of confirmation if the debtor has not been in default of the auto loan.)

Every other right of the lender remains unaffected by the Chapter 13 Plan, in the absence of stipulation. Indeed, bankruptcy judges here, on a daily basis, uphold a creditor's right, under the pre-existing contract between the lender and the debtor, to repossess the vehicle whenever the debtor is in breach of any of the contract duties: the duty to insure, the duty to properly maintain, the duty to apply any insurance proceeds from an accident to the repair of the lender's collateral, the duty of the debtor to obtain the consent of the lender to any sale of the vehicle, the duty of the debtor to notify the lender regarding any damage or other loss to the lender's collateral, the duty to provide proof of insurance, etc., etc. None of those contract rights are modified, recast, abrogated, or in any manner affected by the confirmation of a Chapter 13 plan here. Every one of those contract rights provides a basis for lift of stay upon a showing that

the debtor has violated any of those contract rights while in Chapter 13.

And if the stay is lifted, every single State Law contract right of the lender is made fully available to the lender, except for the normal objective of every bankruptcy case filed by a consumer, which is to obtain a discharge of any ultimate deficiency, so long as the debtor completes his or her plan.

With due respect to the *Atkins* majority, this writer submits that if those were the only two faults it could find with this writer's holding and reasoning in the *White* case, then this writer is no more persuaded by the rationales of the majority in the *Atkins* case than was the dissenting Circuit Judge in that case persuaded.

## CONCLUSION

This writer is confident that if he had explained in *White* what he has explained here, the dissent in *Atkins* would have prevailed - <u>so long as</u> the Chapter 13 practices in the *Atkins* district are the same as those here. In any event a Sixth Circuit case is not binding here. This Court's prior holdings in *In re White* and in *Taylor* are reaffirmed. GMAC's secured claim is disallowed, so long as the Debtor surrenders the insurance proceeds.[9]

---

[9] GMAC makes much of the fact that there was a "deep strip-down" at the beginning of this case, and so GMAC will view the present decision as a "double-hit" that is "inequitable." This is a manifestly overwrought assertion. As the dissent in *Atkins* set forth, car loans are inherently risky for the lenders, and so the lenders set their terms accordingly, up front. Bankruptcy is part of the risk. Excess wear-and-tear is another risk. A "lemon," or a bad model-year for a particular vehicle is another risk. And so forth. Many, many factors affect the value of a repossessed car. Borrowers who are not in Chapter 13 are not "insurers" against such "downsides" under our Chapter 13 cases. Chapter 13 debtors abide by all of the contract terms that affect the value of the collateral. The fact of the matter is that GMAC is no worse off for this decision today than if (1)there never had been any bankruptcy before the car was totaled, and (2)if the Debtor filed bankruptcy only as a response to the lender's demand for payment of the loan deficiency after tender of the insurance check. (Again, this Debtor's "good faith" at all times is not contested). The "strip-down" is irrelevant in such a case because the Debtor's efforts to keep the car under the plan ultimately failed. Under *White* and *Taylor*, the "strip-

SO ORDERED.

Dated:        Buffalo, New York
              March 3, 2006

                                                          _____
                                                                          U.S.B.J.

---

down" was never consummated.